UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IDEA PUBLIC CHARTER SCHOOL, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 05-467 (RMC) |
| CRYSTAL BELTON, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION ON THE DISTRICT OF COLUMBIA'S
MOTION TO DISMISS**

The IDEA Public Charter School ("the School") appeals a Hearing Officer's Determination ordering it to perform certain medical evaluations of C.M., a special education student covered by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (2000). As defendants, the School names Crystal Belton, as next friend of her minor child, C.M.; C.M. herself; and the District of Columbia. The docket indicates that while service was effected on the District of Columbia, neither Ms. Belton nor C.M. has been served. The District has responded with a motion to dismiss or, in the alternative, for summary judgment.

The District argues that this case is, in essence, a challenge to the administrative decision of the hearing officer — a decision over which it has no control. Thus, the District submits that it is not a proper party to this case. The School points, however, to two decisions of this Court that appear to hold to the contrary. *Integrated Design Elecs. Acad. Pub. Charter Sch. v. Gooding*, No. 03-1224 (D.D.C. Dec. 5, 2003) (Mem. Op. & Order); *Sch. for the Arts in Learning (SAIL) Pub. Charter Sch. v. Mena*, No. 02-1772 (D.D.C. July 25, 2003) (Memorandum). With great respect to

my colleagues, the undersigned will disagree and dismiss the complaint against the District.

## I. BACKGROUND

The School has neatly summarized its case:

> This is an action by [the School] to appeal the decision made by Mr. Coles B. Ruff in his February 2, 2005, Hearing Officer's Determination. The hearing officer ruled that [the School] denied C.M. a free, appropriate public education, and ordered [the School] to hold a meeting to discuss whether or not the student needed a neurological evaluation. The meeting was ordered after another hearing officer previously ruled that a neurological [evaluation] was not warranted. The hearing officer also ordered [the School] to conduct an occupational therapy evaluation despite the fact that the student had an occupational therapy evaluation which did not recommend additional testing. [The School] seeks reversal of that determination.

Pl.'s Opp'n at 1-2. This issue will have to wait for another day. The question now before the Court is whether the District of Columbia is a necessary party when review is sought of a Hearing Officer's Determination concerning a dispute between a public charter school and a parent.

### A. Statutory Framework

Under the IDEA, "states and territories, including the District of Columbia, that receive federal educational assistance must establish policies and procedures to ensure, among other things, that free appropriate public education, or FAPE, is available to disabled children." *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005) (citing 20 U.S.C. § 1412(a)(1)(A)) (internal quotation marks omitted). As the D.C. Circuit recently summarized:

> School districts may not ignore disabled students' needs, nor may they await parental demands before providing special instruction. . . . Once such children are identified, a "team" including the child's parents and select teachers, as well as a representative of the local educational agency with knowledge about the school's resources and curriculum, develops an "individualized education program," or

-2-

> "IEP," for the child. . . . [T]he IEP must, at a minimum, provide personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. . . . If no suitable public school is available, the [school system] must pay the costs of sending the child to an appropriate private school.

*Id.* at 518-19 (internal quotation marks and citations omitted; second alteration in original). The statute contains a number of procedural safeguards. Parents of a disabled child must be notified in writing of any proposed change in "the identification, evaluation, or educational placement of the child" and are permitted to challenge "any matter relating [there]to." 20 U.S.C. § 1415(b)(3)(B), (b)(6). After the possibility of mediation, parents can have their complaints considered in "an impartial due process hearing." *Id.* § 1415(f). Any party aggrieved by the result of such a hearing may "bring a civil action . . . in any State court of competent jurisdiction . . . or in a district court of the United States." *Id.* § 1415(i)(2)(A).

The School is a D.C. Public Charter School. *See* D.C. Code §§ 38-1701.01(8) (defining "Charter school"), § 38-1800.02(29) (defining "Public charter school"). Public Charter Schools were established in the District of Columbia to provide public schools, among other things, "an option for more autonomy over their administration, operations and expenditures." *Id.* § 38-1701.2(7). To that end, a Public Charter School has the power to "be responsible for its own operation, including preparation of a budget and personnel matters" and to "sue and be sued in its own name." *Id.* § 38-1702.5(b)(7), (8). A Public Charter School is "a publicly funded school in the District of Columbia that . . . is not a part of the District of Columbia public schools." *Id.* § 38-1800.02(29).[1] Moreover, a Public Charter School "shall not be deemed, considered, or construed

---

[1] This provision is subject to exception when a Public Charter School's charter is revoked or is not renewed; however, neither situation is applicable here. D.C. Code §§ 38-1800.02(29) (noting exceptions), 38-1800.12(d)(5) (not renewed), 38-1800.13(c)(5) (revoked).

to be an entity of the District of Columbia government." *Id.* § 38-1702.5(p).

In the District of Columbia, Public Charter Schools must elect to be treated as a local education agency ("LEA Charter") or a D.C. public school ("District Charter") for purposes of the IDEA. *Id.* § 38-1802.10(c); D.C. Mun. Reg. § 5-3019.1. The School has elected to be its own LEA for IDEA purposes. Compl. ¶ 2; Def.'s Mot. at 3; Pl.'s Opp'n at 2. When a Public Charter School elects to be its own LEA, District of Columbia Public Schools ("DCPS") fulfills the role of the State Education Agency ("SEA") under the IDEA. *See* D.C. Mun. Reg. § 5-3019.9. When an LEA Charter concludes that it cannot serve a child with a disability enrolled in its facility with the funds available to it, it must appeal to DCPS, in DCPS's role as the SEA, for assistance. *Id.* If DCPS agrees that the LEA Charter cannot serve the student, DCPS will assume responsibility for the child. *Id.* § 5-3019.11.

LEA Charters are responsible for IDEA compliance in their schools, including "documentation of required policies and procedures," *id.* § 5-3019.2, "special education evaluations, and, if necessary, IEPs and placements for [disabled] children," *id.* § 5-3019.4. By contrast, DCPS is responsible for these duties for District Charters. *Id.* § 3019.7. LEA Charters, moreover, must "provide their own representation at, and be responsible for implementation of all agreements or decisions resulting from, mediation and due process hearings involving children enrolled in their school, unless implementation of the agreement or decision is the responsibility of DCPS as a result of any actions or inactions of DCPS while a child had been enrolled at an LEA Charter school or pursuant to federal or local law or regulation." *Id.* § 5-3019.13.

Due process hearings are conducted by impartial hearing officers, who are contracted for by DCPS. *Id.* § 5-2406. Hearing officers are independent contractors who are neither officers

nor employees of the D.C. Board of Education or the LEA Charter; by regulation, they cannot have participated in the development of the recommendations on appeal. *See id.* §§ 5-3001.1 (defining "Impartial hearing officer"), 5-2406.1 (requiring impartiality and objectivity). These same hearing officers hear appeals involving LEA Charters, District Charters, and non-charter Public Schools when any of those educational institutions is alleged to have failed to provide FAPE. Def.'s Mot. at 8. However, DCPS "ha[s] no authority to direct, rescind, overrule, modify, or alter the substantive decision of any hearing officer." D.C. Mun. Reg. § 5-2407.4.[2]

### B. Facts Behind the Instant Dispute

C.M. was enrolled at the School and was evaluated in February 2004 for special education services. Compl. ¶¶ 5-6. This evaluation included a psychoeducational evaluation, which recommended that a neurological evaluation be completed. *Id.* ¶ 6. On February 18, 2004, C.M.'s parent requested a due process hearing and, on April 5, 2004, amended that request to specifically seek a neuropsychological evaluation.[3] *Id.* ¶ 7. A due process hearing was held on April 26, 2004, at which time the hearing officer reviewed the results of the psychoeducational evaluation. *Id.* ¶ 8. In a decision issued on May 11, 2004, the hearing officer dismissed the parent's request for a neurological evaluation with prejudice, and instead ordered that a Multi-Disciplinary Team ("MDT")

---

[2] Although DCPS retains some oversight responsibility over hearing officers with respect to procedural matters in some statutory contexts, *see* D.C. Mun. Reg. § 5-2407.5, that duty does not apply to IDEA due process hearings. *See id.* ("This subsection shall not apply to hearings held on matters arising pursuant to Pub. L. No. 94-142, 89 Stat. 773, (1975), as amended, and its implementing regulations."); *Schaffer v. Weast*, 126 S. Ct. 528, 531 (2005) (explaining that "Congress first passed IDEA as part of the Education of the Handicapped Act in 1970 . . . and amended it substantially in the Education for All Handicapped Children Act of 1975, 89 Stat. 773.")

[3] It is unclear to what extent, if at all, a "neuropsychological" evaluation differs from a "neurological" evaluation. The Court borrows these terms from the Complaint. Compl. ¶¶ 6-7.

meeting take place. *Id.*

The School held a MDT meeting for C.M. on August 17, 2004. *Id.* ¶ 9. The School, the parent, and C.M.'s advocate were present. *Id.* The advocate asked the School to perform a neurological evaluation; this request was apparently based on the recommendation of the initial psychoeducational evaluation. *Id.* The School declined, asserting that "they did not need a medical evaluation in order to educationally program for C.M." and that the hearing officer had already ruled on that issue. *Id.*; Def.'s Mot. at 4. An occupational therapy evaluation was also requested, but the School did not agree. Compl. ¶ 10.

The parent requested another due process hearing in November 2004, and one was convened on January 18, 2005. *Id.* ¶ 11. The parent again requested a neurological evaluation and an occupational therapy evaluation. The School sought dismissal on the basis of *res judicata* but its motion was denied. *Id.* In a decision issued on February 2, 2005, the hearing officer ordered the School to convene a Special Education Plan ("SEP") meeting to determine whether the neurological evaluation of C.M. was needed. *Id.* ¶ 12. The hearing officer also ordered the School to perform an occupational therapy evaluation. *Id.*

This lawsuit followed. The School complains that the second hearing officer erred in three respects: (1) denying the School's *res judicata* motion; (2) ordering that an SEP meeting be convened; and (3) ordering an occupational therapy evaluation.[4] *Id.* ¶¶ 13-18.

---

[4] Curiously, the School also seeks relief for denial of its rights to due process, equal protection, and equal access to education, pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985; Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq.*; the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*; and the Fifth Amendment. Compl. ¶ 1. These statutes (and constitutional provision) are not referenced in Plaintiff's substantive counts or prayer for relief. For present purposes, the Court will rely on the IDEA alone for its jurisdiction. 20 U.S.C. § 1415(i)(2).

## II. LEGAL STANDARDS

The District moves to dismiss the School's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The plaintiff need not plead the elements of a *prima facie* case in the complaint. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). In deciding a Rule 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).

## III. DISCUSSION

The only question presently before the Court is whether the District of Columbia is a necessary party to this litigation. As the recitation of facts makes clear, DCPS played no role in the School's decisions at issue, in advancing any arguments before the hearing officer, or in deciding whether C.M. had received FAPE. In point of fact, the School agrees with the District's argument that, because the School has elected to be its own LEA, it is the School, rather than DCPS, that bears the responsibility of providing FAPE to its special education students. Pl.'s Opp'n at 2. It explains that it named the District as a defendant only because two judges on this Court have, under similar circumstances in the past, required charter schools to do so. *Id.* at 2-4.

In *School for the Arts in Learning (SAIL) Public Charter School v. Mena*, No. 02-1772 (D.D.C. July 25, 2003), a D.C. Charter School sought review of a hearing officer's decision entitling the student to certain services under the IDEA. The school named only the student's parents as defendants. Stating that the parents could not provide the relief sought by the school, the court found that "[r]elief cannot be granted unless the District of Columbia or DCPS, which is the educational agency responsible for ensuring compliance with the IDEA, is the named defendant." Slip Op. at 1. Without elaborating on the relief sought, the court granted the parents' motion to dismiss under Rule 12(b)(7) for failure to join a necessary party.[5] *Id.* at 2.

Similarly, in *Integrated Design Electronics Academy Public Charter School v. Gooding*, No. 03-1224 (D.D.C. December 5, 2003), another D.C. Charter School — in fact, the Plaintiff in the instant case — sought review of a hearing officer's decision directing it to perform certain evaluations, on the ground that it had not received adequate (or any) notice of the due process hearing. Slip Op. at 2, 4. The court stated: "DCPS is the agency responsible for ensuring school compliance with the IDEA in the District of Columbia, and it held the due process hearing that plaintiff seeks to have reviewed. If plaintiff were to prevail and the Court vacated the determination or ordered a second due process hearing, DCPS would have to provide the relief as the agency responsible for IDEA compliance." *Id.* at 3 (citation omitted). Concluding that, "[i]n other words, any relief could be provided only by DCPS," the court directed the school to join DCPS as a party defendant pursuant to Rule 19(a). *Id.*

---

[5] Unless otherwise indicated, "Rule" refers to the Federal Rules of Civil Procedure.

There is nothing in these decisions to indicate that the precise argument made to this Court was advanced before: that is, that the School is an LEA Charter, not a District Charter, and thus stands on its own under the IDEA, unless DCPS has responsibility for implementing the decision appealed from, *see* D.C. Mun. Reg. § 5-3019.13, or assumes responsibility for the student, in its role as SEA, because the LEA Charter cannot serve the student, *see id.* § 5-3019.11.  Neither *SAIL* nor *Integrated Design* suggests that the distinction between an LEA Charter and a District Charter school for IDEA purposes was argued or relied upon by the parties to those cases.[6]  Neither decision addresses the independence of hearing officers; instead of recognizing their status as independent contractors who are required to be impartial neutrals, *id.* §§ 5-2406, 5-3001.1, both appear to perceive the hearing officers to be DCPS employees.  And neither appears to have recognized that DCPS is without authority to alter the substantive decision of the hearing officer. *Id.* § 5-2407.4.  With the benefit of the more explicit statutory and regulatory references and arguments made by the District of Columbia here, this Court can comfortably come to a different conclusion.

At bottom, the School is an LEA Charter involved in a dispute with the parent of a child concerning what is necessary to provide FAPE to the child.  There is no indication that the School is unable to provide the ordered services and would thus need to ask DCPS, in its role as

---

[6] "Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed." *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting) (citing, *inter alia*, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 272 (1990)).  In any event, "one district court decision is not binding on another district court." *Am. Council of the Blind v. Wash. Metro. Area Transit Auth.*, 133 F. Supp. 2d 66, 74 n.2 (D.D.C. 2001); *see In re Executive Office of the President*, 215 F.3d 20, 24 (D.C. Cir. 2000) ("District Court decisions do not establish the law of the circuit, nor, indeed, do they even establish the law of the district.") (citations and internal quotation marks omitted).

SEA, for assistance. Def.'s Mot. at 9. If the School prevails on the merits of its appeal, the ordered services will not be required. If C.M.'s parent prevails on the merits, the School — not DCPS — will be required to provide the special services and to pay attorneys' fees and costs. Neither scenario requires the involvement of the District of Columbia in this appeal.

That DCPS contracts to provide hearing officers and, in that sense, might be viewed as having "held the due process hearing that plaintiff seeks to have reviewed," *Integrated Design*, No. 03-1224, Slip Op. at 3, is not enough to make DCPS or the District of Columbia a necessary party on appeal to this Court. The hearing officers are independent contractors to DCPS in its role as SEA, not employees of DCPS. They are bound to apply the requirements of IDEA in a neutral and impartial manner. D.C. Mun. Reg. §§ 5-2406, 5-3001.1. There is no reason to believe that a hearing officer would not obey a court order to rehear a case, were it remanded. Requiring the School to join the District as a defendant in this appeal, simply by virtue of DCPS having contracted to provide the independent and impartial hearing officer, is rather like requiring a litigant disappointed at trial to join the district court as a defendant on appeal.

The Court is therefore convinced that, under these circumstances, complete relief can be afforded to the parties without requiring the School to join the District as a defendant, and that the District's absence will neither impair its ability to protect its interests nor leave the remaining parties subject to inconsistent judgments. *See* Fed. R. Civ. P. 19(a).

### IV. CONCLUSION

The School simply seeks judicial review of a Hearing Officer Determination that affects only C.M., C.M.'s parent, and itself. Under these circumstances, the District of Columbia is not a necessary party to the adjudication of the case or to the implementation of any available

remedy.  The District of Columbia's motion to dismiss will be granted.  The School shall promptly effect service on C.M. and C.M.'s parent as directed in the accompanying Order.

A memorializing order accompanies this Memorandum Opinion.


Date: March 15, 2006                                             /s/
                                                                 ROSEMARY M. COLLYER
                                                                 United States District Judge